FILED
United States Court of Appeals
Tenth Circuit

April 23, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RAYMOND LANCE BRIGGS,
Individually, and as Personal
Representative of the Estate of Kelsey
Shelton Smith-Briggs, Deceased,

        Plaintiff-Appellee,

    v.

KRISTAL JOHNSON, in her
individual capacity; YOLANDA
HUNTER, in her individual capacity;
DAVID BURGESS, in his individual
capacity,

        Defendants-Appellants,

    and

CARLA LYNCH, in her individual
capacity; JEAN BONNER, in her
individual capacity; EASTERN
OKLAHOMA YOUTH SERVICES,
INC., an Oklahoma corporation,

        Defendants.

No. 07-6037

(W.D. Oklahoma)

(D.C. No. 06-CV-677-M)

**ORDER AND JUDGMENT**[*]

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Before **MURPHY**, **BALDOCK**, and **McCONNELL**, Circuit Judges.

---

I.     **Introduction**

Plaintiff-Appellee, Raymond Lance Briggs, is the Personal Representative

of the estate of his daughter, Kelsey Shelton Smith-Briggs ("Kelsey").  Kelsey

died on October 11, 2005, while in the physical custody of her mother.  At the

time of Kelsey's death, she was in the legal custody of the Oklahoma Department

of Human Services ("DHS").  Defendants-Appellants, Kristal Johnson, Yolanda

Hunter, and David Burgess (collectively "Defendants") are employed by DHS.

Briggs filed claims against Defendants pursuant to 42 U.S.C. § 1983 alleging,

*inter alia*, they violated Kelsey's Fourteenth Amendment substantive due process

rights by failing to adequately investigate allegations of abuse, discouraging the

reporting of additional incidents of abuse, and otherwise failing to protect Kelsey.

Defendants argued Briggs's complaint failed to state a claim against them

in their individual capacities and they moved to have the claims dismissed.  The

district court granted the motion in part and denied it in part.  It concluded Briggs

sufficiently alleged a violation of Kelsey's right to substantive due process under

the danger creation theory based on his allegation Defendants discouraged the

reporting of additional incidents of abuse.  *See Currier v. Doran*, 242 F.3d 905,

921-22 (10th Cir. 2001).  The court also ruled that Defendants were not entitled to

qualified immunity because the right asserted was clearly established under

*DeShaney* and its progeny. *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189 (1989).

Defendants brought this interlocutory appeal challenging the district court's denial of the motion to dismiss. Because the district court correctly concluded Defendants failed to show they are entitled to qualified immunity based on Briggs's allegation that they discouraged the reporting of abuse, we **affirm** the denial of Defendants' motion.

## II.     Factual Background

The facts relevant to this appeal are taken from Briggs's Second Amended Complaint and are presented in the light most favorable to him. *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). In January 2005, DHS received a referral for an investigation of child abuse allegedly perpetrated upon Kelsey by her mother, Raye Dawn Smith. DHS investigated the referral and confirmed that Kelsey's injuries, which included bruises and a broken clavicle, were non-accidental and the result of abuse. Kelsey was removed from her mother's custody and placed in the custody of DHS. After an emergency guardianship proceeding, the state court appointed Kelsey's paternal grandmother to act as Kelsey's guardian.

In February 2005, a deprivation petition was filed by the Lincoln County District Attorney. The petition accused Smith of either abusing Kelsey or failing to protect her. The state court ordered Smith to obtain parenting services and

approved a visitation schedule permitting unsupervised visits between Kelsey and

Smith. From January 17, 2005, to March 16, 2005, Smith did not have

unsupervised visitation rights and Kelsey did not suffer any injuries during that

period. One week after the unsupervised visits began, however, Kelsey suffered

additional abuse. In March 2005 and April 2005 Kelsey suffered bruising on her

legs and face, leg contusions, a closed head injury, and fractures of both tibias.

Thereafter, Kelsey continued to sustain injuries while in Smith's care and her

health declined. On October 11, 2005, Kelsey died while in the physical custody

of Smith and Smith's husband, Michael Porter.

Acting individually and as personal representative of Kelsey's estate,

Briggs filed an action in the District Court of Oklahoma County, Oklahoma,

alleging state and federal claims against Defendants in their individual

capacities.[1] After Defendants removed the action to federal court, Briggs filed a

Second Amended Complaint asserting seven claims for relief. Only two of the

claims involved Defendants: a Fourteenth Amendment substantive due process

claim brought pursuant to 42 U.S.C. § 1983 and a claim for punitive damages.

Defendants moved to dismiss the claims asserted against them. The district

court granted the motion with respect to Briggs's allegations that Defendants: (1)

---

[1]Briggs also asserted claims against Jean Bonner; Carla Lynch; Youth and Family Resource Center, Inc.; Eastern Oklahoma Youth Services, Inc.; DHS; and Howard Hendrick in his official capacity as DHS Director. Those claims are not relevant to this appeal.

failed to adequately investigate Smith's background, (2) failed to properly investigate reports of suspected abuse, (3) failed to investigate other sources of information about Kelsey, (4) failed to cooperate with other entities and individuals involved with Kelsey, (5) failed to fully inform the Oklahoma state court about all issues material to Kelsey's abuse, and (6) failed to protect Kelsey. *Briggs v. Oklahoma ex rel. Dep't of Human Servs.*, 472 F. Supp. 2d 1304, 1314 (W.D. Okla. 2007). Specifically, the court concluded Briggs could not demonstrate that Defendants' alleged actions either created or enhanced the danger posed by Smith or rendered Kelsey more vulnerable to abuse. *Id*.; *see also Currier*, 242 F.3d at 919 (stating the "danger creation theory . . . focuses on the affirmative actions of the state in placing the plaintiff in harm's way"). The district court, however, denied the motion with respect to Briggs's allegations, predicated on the danger creation theory, that Defendants discouraged the reporting of additional abuse against Kelsey. *Briggs*, 472 F. Supp. 2d at 1314-15. The court then concluded Defendants were not entitled to qualified immunity on this claim because the constitutional right Briggs asserted was clearly established. *Id*. at 1315. It is from this ruling that Defendants appeal. *See Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006) ("An order denying qualified immunity that raises purely legal issues is immediately appealable.").

**III.    Discussion**

This court conducts a de novo review of the denial of a motion to dismiss based on qualified immunity. *Butler v. Rio Rancho Pub. Sch. Bd. of Educ.*, 341 F.3d 1197, 1199 (10th Cir. 2003). The sole question before us is whether Defendants are entitled to qualified immunity on Briggs's claim that they discouraged the reporting of abuse against Kelsey. When reviewing this legal question, we accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the nonmoving party. *Id.*

The purpose of the qualified immunity doctrine is to shield "government officials performing discretional functions . . . from liability for civil damages insofar as their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wyatt v. Cole*, 504 U.S. 158, 166 (1992) (quotation omitted). Once a defendant has asserted the qualified immunity defense to a substantive due process claim, the burden shifts to the plaintiff to establish the defendant's conduct violated (1) a constitutional right (2) that was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). In his complaint, Briggs alleged Defendants violated Kelsey's substantive due process rights by discouraging the reporting of additional abuse against Kelsey. Defendants argue Briggs has not alleged facts sufficient to make out a substantive due process claim. To be sufficient, Briggs's complaint must contain enough factual allegations "to state a claim to relief that

-6-

is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *see also Robbins v. Oklahoma*, No. 07-7021, 2008 WL 747132, *4 (10th Cir. March 21, 2008) (concluding a complaint alleging substantive due process claims against multiple defendants must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her" (alterations omitted)).  Briggs argues his allegations are sufficient under the danger creation theory.

As a general rule, state actors have no constitutional due process obligation to protect an individual from the violent acts of third parties.  *DeShaney*, 489 U.S. at 196 (stating the purpose of the Due Process Clause of the Fourteenth Amendment is "to protect the people from the State, not to ensure that the State protect[s] them from each other").  This court, however, has recognized a "danger creation" exception to this general rule.[2]  *Seamons v. Snow*, 84 F.3d 1226, 1236 (10th Cir. 1996) ("[S]tate officials can be liable for the acts of third parties where those officials 'created the danger' that caused the harm.").  To state a claim under the danger creation exception, Briggs must plead facts that show: (1) Defendants created the danger or increased Kelsey's vulnerability to the danger in some way; (2) Kelsey was a member of a limited and specifically definable group;

---

[2]A second exception, the special relationship doctrine, is not implicated in this appeal.  Although the district court ruled Briggs's substantive due process claim failed to the extent it was premised on the special relationship doctrine, that portion of the district court's ruling is not before us.

(3) Defendants' actions put Kelsey at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) Defendants acted recklessly in conscious disregard of that risk; and (6) Defendants' conduct, when viewed in total, shocks the conscience. *Armijo v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1262-63 (10th Cir. 1998). As to the first element, Defendants' actions must involve affirmative conduct; the failure to act, even in the face of a known risk, is insufficient. *Id*. at 1263; *Graham v. Indep. Sch. Dist. No. I-89*, 22 F.3d 991, 995 (10th Cir. 1994).

Defendants challenge the sufficiency of Briggs's complaint as to two of the six elements of a danger creation claim.[3] They argue Briggs has failed to allege facts demonstrating that affirmative conduct on their part created or increased the danger to Kelsey. They also argue their alleged conduct is not conscience shocking.

---

[3]In their opening brief, Defendants argue their alleged conduct had no effect on the mandatory duty to report child abuse imposed by Okla. Stat. tit. 10, § 7103. They also argue Briggs has not alleged that any abuse went unreported or that Kelsey was further abused because of their conduct. It is unclear how these arguments fit within the framework for asserting a danger creation claim set out in *Armijo v. Wagon Mound Public Schools*, 159 F.3d 1253, 1262-63 (10th Cir. 1998). In any event, in their motion to dismiss, Defendants did not point out a failure on Briggs's part to allege that: Kelsey was a member of a limited and specifically definable group; their actions put her at substantial risk of serious, immediate, and proximate harm; the risk was obvious or known; or they acted recklessly in conscious disregard of that risk. Their arguments to the district court were confined to assertions they did not commit any act that placed Kelsey in danger and their conduct was not conscience shocking. This court does not consider arguments raised for the first time on appeal. *Cummings v. Norton*, 393 F.3d 1186, 1190-91 (10th Cir. 2005).

This court has previously evaluated a substantive due process claim similar to the one at issue in this appeal. *Currier*, 242 F.3d at 921. In *Currier v. Doran*, the state of New Mexico removed two young children from the custody of their mother, Devonne Juarez, and placed them in the custody of their father, Christopher Vargas. *Id*. at 909. Vargas's physical abuse of the children led to the death of one child. *Id*. at 910. Representatives of the children filed suit under § 1983 alleging, *inter alia*, that defendant Shirley Medina, a social worker employed by the state, violated the children's substantive due process rights when she instructed Juarez "to stop making allegations of abuse." *Id*. at 921. Medina moved for summary judgment, arguing the plaintiffs failed to state a substantive due process claim. *Id*. at 910. The district court treated the motion as a motion to dismiss and denied it. *Id*. at 911 (concluding the district court properly treated defendant's motion as a motion to dismiss). This court concluded plaintiffs' allegation sufficiently set out the requisite affirmative conduct necessary to support a danger creation claim because Medina's alleged conduct "interfere[d] with the protective services which would have otherwise been available" to the children. *Id*. at 922 (quotation omitted) ("[T]he state creates danger when it cuts off potential sources of private aid.").

Defendants attempt to distinguish *Currier* on the ground that Briggs has alleged only that they merely "discouraged" the reporting of abuse whereas in *Currier*, defendant Medina engaged in the affirmative act of "instructing" Juarez

to stop making allegations of abuse. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002) (noting a plaintiff must show the state actors committed affirmative acts). We disagree with Defendants' assertion that Briggs's complaint does not allege affirmative conduct on their part. Admittedly, the allegation that Defendants discouraged the reporting of abuse *could* be construed to describe both action and inaction. Defendants may have specifically directed individuals interested in Kelsey's welfare to cease reporting abuse *or* their inaction in responding to repeated reports may have had the effect of discouraging those individuals from continuing to report abuse. This court, however, must not only accept Briggs's factual allegation as true, it must also construe that allegation in the light most favorable to him.[4] *Butler*, 341 F.3d at 1199. Under that standard, we conclude he has alleged affirmative conduct on the part of Defendants by asserting they discouraged the reporting of additional incidents of abuse against Kelsey. Even in the absence of the required inference, the natural and obvious interpretation of Briggs's allegation, read in context, is that Defendants affirmatively discouraged the reporting of abuse.

Not all affirmative conduct is sufficient to support a substantive due process claim. "Affirmative conduct for purposes of § 1983 should typically involve conduct that imposes an immediate threat of harm, which by its nature

---

[4]Because our review is confined to the pleadings, *MacArthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2002), we **deny** Briggs's Motion to Withdraw Erroneous Statement of Counsel at Oral Argument.

has a limited range and duration." *Ruiz*, 299 F.3d at 1183. Additionally, the conduct must be directed at the plaintiff, not the public in general. *Id.*

Construing his complaint in the light most favorable to him, Briggs has alleged that Defendants, Jean Bonner, and Carla Lynch, acting in concert, instructed at least one person to cease reporting ongoing abuse perpetrated against Kelsey. Clearly, this conduct was directed specifically at Kelsey, not the public at large. Further, it is evident from a reading of the entire complaint that Kelsey's guardian, her paternal grandmother, was involved in reporting that Kelsey was being abused during her unsupervised visits with Smith. As we recognized in *Currier*, the act of instructing individuals to cease reporting abuse has the effect of impeding access to protective services or other sources of assistance otherwise promptly available to the victim at the time of the abuse. 242 F.3d at 922. Thus, if true, Defendants' actions imposed an immediate threat of harm to Kelsey which was limited in range and duration. Accordingly, we conclude Briggs has sufficiently alleged that Defendants created or increased Kelsey's vulnerability to abuse by their alleged act of discouraging the reporting of additional incidents of abuse.

Defendants next argue Briggs has failed to make out a danger creation claim because their alleged affirmative conduct is not conscience shocking. *See Armijo*, 159 F.3d at 1262-63 (holding § 1983 plaintiff must demonstrate defendant's conduct is conscience shocking). Again we disagree. This court

determines whether state action shocks the conscience by evaluating "(1) the general need for restraint; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policy decisions impacting public safety." *Currier*, 242 F.3d at 920. Defendants were aware that Kelsey suffered no injuries from January 17, 2005, to March 16, 2005, the period during which her paternal grandmother acted as her guardian and Smith had no unsupervised visitation rights. They were also aware that one week after unsupervised visits with Smith commenced, Kelsey suffered abuse. Yet, according to Briggs, Defendants nonetheless discouraged individuals from continuing to report abuse. On this record, we can discern no reasoned justification or policy consideration that would support such conduct. Viewed in total, Briggs has described conduct that could be "construed as conscience-shocking, depending on context" after the facts are fully developed. *Armijo*, 159 F.3d at 1264.

Briggs's complaint differs from the complaint we concluded was insufficient in a recent case also involving allegations of substantive due process violations by state employees. *See Robbins*, 2008 WL 747132, at *5-*8. In contrast to the complaint in *Robbins*, Briggs's allegation that Defendants discouraged the reporting of additional incidents of abuse is specific enough to give Defendants fair notice of the grounds on which he claims entitlement to relief. Based on this allegation, the district court had no difficulty applying *Currier* to determine that the constitutional right asserted was clearly established.

*See id.* at *4 (stating allegations must be sufficiently clear to permit a district court "to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established"). Further, although Briggs's complaint contains multiple claims against multiple defendants, there is no confusion as to whom the allegation is asserted against. *See id.* at *5 (concluding the complaint did not give the defendants fair notice because it failed to distinguish which acts were attributable to which defendant). The complaint clearly names Defendants Burgess, Johnson, and Hunter as the individuals who allegedly discouraged the reporting of abuse. It also clearly identifies Burgess, Johnson, and Hunter as the individuals who "were repeatedly notified of injuries and/or abuse to Kelsey."

Briggs's complaint, viewed in its entirety, gives this court reason to believe that he has "a reasonable likelihood of mustering factual support" for his substantive due process claim based on the danger creation theory. *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Thus, Briggs has "state[d] a claim to relief that is plausible on its face," *Twombly*, 127 S. Ct. at 1974, and satisfied his obligation to allege "the deprivation of an actual constitutional right." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). Our inquiry ends here because Defendants have not challenged the district court's conclusion that Briggs has met his burden of showing that the constitutional right he asserts was clearly established. *See Conn*, 526 U.S. at 290 (holding a court evaluating a

-13-

qualified immunity defense must determine whether the constitutional right was clearly established at the time of the violation).

## IV.   Conclusion

We **affirm** the denial of Defendants' motion to dismiss to the extent they assert an entitlement to qualified immunity on Briggs's danger creation claim predicated on their act of discouraging the reporting of additional incidents of abuse.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

*Briggs v. Johnson*, No. 07-6037.
**McCONNELL**, J., dissenting.

Counsel drafted this complaint and the district court decided the motion to dismiss under the pleading standard set by *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). That standard was overruled by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). *See Robbins v. Oklahoma*, ___ F.3d ___, No. 07-7021, 2008 WL 747132 (10th Cir. Mar. 21, 2008). I would remand this case to the district court for consideration under the new standard and, if appropriate, for dismissal without prejudice to permit counsel to prepare a complaint in compliance with *Twombly*.